IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AARDWOLF INDUSTRIES LLC<br><br>v.<br><br>AARDWOLF-USA.COM et al. | Case No. 1:16-cv-00234-LO-TCB |

## MOTION FOR DEFAULT JUDGMENT

Plaintiff Aardwolf Industries LLC, through counsel, moves for default judgment against Defendant domain names AARDWOLF-USA.COM and AARDWOLF-AUS.COM pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.

## I. PROCEDURAL HISTORY

On March 4, 2016, Plaintiff filed this *in rem* action against domain names AARDWOLF-USA.COM and AARDWOLF-AUS.COM for violating the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 USC 1125(d). Thereafter, Plaintiff complied with statutory notice obligations pursuant to 15 USC 1125(d)(2)(D)(i). When Defendants failed to respond, Plaintiff sought to serve notice of this action via publication. *See* Docket #4. Pursuant to the Court's Order of March 23, 2016, undersigned counsel published notice of this action in *The Washington Post* on March 26, 2016 and provided notice of such publication to the Court on April 5, 2016. *See* Docket #7. Pursuant to the Court's Order of May 6, 2016, undersigned counsel again published notice of this action in *The Washington Post* on May 9, 2016 and provided notice of such publication to the Court on May 16, 2016. *See* Docket #13.

When the Defendants again failed to respond after service via publication, Plaintiff filed a request for Entry of Default on April 26, 2016. *See* Docket #8. The Clerk entered a Default

1

against Defendant AARDWOLF-USA.COM on May 2, 2016. *See* Docket #9. Plaintiff again filed a request for Entry of Default against Defendant AARDWOLF-AUS.COM on June 10, 2016. *See* Docket #14. The Clerk entered a Default against Defendant AARDWOLF-AUS.COM on June 13, 2016. *See* Docket #15. This Motion follows.

## II. ARGUMENT

Plaintiff's well-pled allegations, as well as the Defendants' failure to respond, make entry of default judgment proper.

### A. Standard for Default Judgment

Pursuant to Fed. R. Civ. P 55(b)(2) a court may properly enter a default judgment at its discretion. Entering a default judgment is proper when the pleadings and supporting materials establish that a plaintiff is entitled to the requested relief. *See e.g. Ryan v. Homecoming Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Well-pleaded statements of fact in Plaintiff's Complaint are deemed admitted when a defendant fails to answer or otherwise respond to the allegations. *See e.g. Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660,662 (E.D. Va. 2006). As demonstrated in detail below, Plaintiff is entitled to judgment in this matter.

### B. Jurisdiction is Proper

The Court has original subject matter jurisdiction pursuant to 28 USC 1331 and the Lanham Act, codified as 15 USC 1125(d).

This Court has personal jurisdiction in this matter because the domain name is "in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located." 15 USC 1125(d)(2)(A). VeriSign, Inc., the registry for the .COM top level domain names is located within this judicial district.

Plaintiff has properly filed this *in rem* action because Plaintiff's due diligence did not identify "a person who would have been a defendant" in this matter. 15 USC 1125(d)(2)(A)(ii). On information and belief, the contact information found on each of the WHOIS records for the domains at issue is either fraudulent, outdated or refers to a registrant that is no longer administering the domain names. Plaintiff previously set forth the specific steps taken to identify the domain name owner. *See* Docket #4.

Finally, jurisdiction is proper in this Court because "a substantial part of property that is the subject of the action is situated," namely, the domain names at issue, in this District pursuant to 28 USC 1391(b) and 15 USC 1125(d)(2)(A).

Given the foregoing, Plaintiff has established that jurisdiction is proper.

**C. Plaintiff's Well-Pled Complaint Establishes an ACPA Claim**

Plaintiff can establish its *in re*m claim under the ACPA by demonstrating that jurisdiction is proper and that the elements of trademark infringement or dilution can be established against the infringing domain name. *See e.g. Volkswagen v. Volkswagentalk.com*, 584 F. Supp. 2d 879, 882 (E.D. Va. 2008). To show trademark dilution, Plaintiffs must show that it (1) owns a distinctive famous mark, (2) the use by another in commerce of which (3) is likely to cause dilution by blurring or tarnishment, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury. *Id.* (*citing* 15 USC 1125(c)). Plaintiff's well-pled Complaint meets this standard.

<u>1. Common Law Marks Are Protected Under the ACPA</u>

Unregistered trademarks are entitled to protection from infringement under 15 U.S.C. § 1125(a). Under United States trademark law, common law rights in a trademark or service mark may be established by extensive or continuous use sufficient to identify particular goods or

services as those of the trademark owner. *See United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90 (1918). Stated another way, while a plaintiff may "not yet own a federal registration for [a] mark it may nonetheless assert a claim for trademark infringement and false designation of origin under section 43(a) of the Lanham Act [15 U.S.C. § 1125(a)]." *Spear, Leeds, and Kellogg v. Rosado*, 122 F. Supp. 2d 403, 405(S.D. N.Y. 2000) (*citing 815 Tonawanda St. Corp. v. Fay's Drug Co., Inc.*, 842 F.2d 643, 646-47 (2d. Cir. 1988). Moreover, "Section 43(a) [15 U.S.C. §1125(a)] 'prohibits a broader range of practices than does § 32,' which applies to registered marks, but it is common ground that § 43(a) protects qualifying unregistered trademarks." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). Plaintiff can demonstrate its trademark rights as they relate to the domain names at issue.

Given that the mark is unregistered, Plaintiff must rely on "secondary meaning" in the marketplace as required by 15 U.S.C. § 1052(f). According to that statute, nothing shall:

> "prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Director may accept as prima facie evidence that the mark has become distinctive, as used on or in connection with the applicant's goods in commerce, *proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made.*"

*See* 15 U.S.C. § 1052(f). The ACPA refers to the "famousness" of a mark "within the meaning of subsection (c)." 15 U.S.C. §1125(d)(1)(B)(IX). "Subsection (c)" refers to 15 U.S.C. § 1125(c)(2)(A), which reads, in relevant part, as follows:

> "(2) Definitions.
>     (A) . . . In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:
>         (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>         (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii) The extent of actual recognition of the mark."

15 U.S.C. § 1125(c)(2)(A). As demonstrated below, Plaintiff has acquired the requisite secondary meaning as to the domain name at issue for purposes of prevailing under the ACPA.

2. Plaintiff Owns a Famous Mark in Its Name

Plaintiff Aardwolf Industries LLC has established common law trademark rights in the "AARDWOLF" mark contained in each of the domain names at issue in this matter as a result of extensive and continuous use of the "AARDWOLF" mark.

Plaintiff has engaged in commerce throughout the United States since 2007, as demonstrated by invoices beginning in 2007 documenting sales to customers throughout the United States, a summary spreadsheet of invoices from 2008 to 2015, and shipping records of goods sent from Plaintiff to customers in the United States. *See* Docket #1-4, Docket #1-6, Exhibit #3. As demonstrated by the invoices and summary spreadsheet, Plaintiff engages in commerce with customers in states throughout the United States. *See* Docket #1-4, Docket #1-6, Exhibit #1. Additionally, Plaintiff distributes catalogs throughout the United States. *See* Docket #1-5.

Finally, Plaintiff maintains the domain name "aardwolf.com.au" where information about Plaintiff's operations are advertised. *See* Exhibit #2.

As demonstrated, Plaintiff has achieved extensive brand recognition in the construction, machinery, and stone and glass industry and built a following around its name, expertise, and reputation. Accordingly, Plaintiff has acquired the requisite secondary meaning as to each of the domain names at issue for purposes of prevailing under the ACPA.

### 3. Plaintiff's Famous Mark Is Being Used by Other Entities in Same Industry

The domain names AARDWOLF-USA.COM and AARDWOLF-AUS.COM were registered in June 2015 without Plaintiff's consent and the domains continue to be registered to this day. *See* Exhibit #3, Exhibit #4. If an Internet visitor were to visit Aardwolf-USA.com, he or she would be presented with a website that clearly intends to dilute the brand of the Plaintiff in this matter. *See* Exhibit #5. The infringing domain names host content that also displays goods related to construction, machinery, and stone and glass industry. *Id.* These goods are in direct competition with the plaintiff, and constitute a clear example of trademark infringement. Default is appropriate based on this fact alone.

### 4. Domain Names Themselves Are Likely to Cause Dilution by Blurring or Tarnishment

Even in an instance where the domain names at issue did not host infringing content in the same industry as Plaintiff's marks, the domain names at issue dilute Plaintiff's mark by blurring or tarnishing the actual source for information Plaintiff and Plaintiff's products and services, because, on their faces, AARDWOLF-USA.COM and AARDWOLF-AUS.COM suggest that the domain names are associated with Plaintiff because of their uniqueness and fame in the construction industry.

The content of the websites is no defense if the mark, viewed alone, would indicate that content at the domain names would be associated with the trademark holder. This is because "an internet user would not realize that they were not on an official [mark holder's] web site until after they had used" the infringing domain name to access the webpage. *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 366-367 (4th Cir. Va. 2001) (*citing People for the Ethical Treatment of Animals, Inc. v. Doughney*, 113 F. Supp. 2d 915, 921 (E.D. Va. 2000)). Stated more simply, the infringement occurs when a consumer starts to type in the

AARDWOLF-USA.COM and AARDWOLF-AUS.COM domain names in an effort to get information about Aardwolf Industries LLC's products and services.

While analysis of the content of the web sites hosted at AARDWOLF-USA.COM and AARDWOLF-AUS.COM already demonstrate demonstrable infringement, the content of the domain names themselves also constitute infringment. An infringer "need not have actually sold or advertised goods or services on the [infringing] website." *Id.* Rather, an infringer "need only have connected the website to other's goods or services." *Id.* (*citing OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F. Supp. 2d 176 (W.D.N.Y. 2000)). In this case, Defendants connect the domain name AARDWOLF-USA.COM and AARDWOLF-AUS.COM to the goods and services of the actual mark holder, Aardwolf Industries LLC, despite the domain names not being an actual source of information about Aardwolf Industries LLC, its products, and its services. The *People for the Ethical Treatment of Animals* court provided analysis of such situations:

> "In *Planned Parenthood Federation of America, Inc. v. Bucci*, the plaintiff owned the 'Planned Parenthood' mark, but the defendant registered the domain name plannedparenthood.com . . . Using the domain name, the defendant created a website containing information antithetical to the plaintiff's views. The court ruled that the defendant used the plaintiff's mark 'in connection with' the distribution of services."
>
> *Id.* (*citing Planned Parenthood Fed'n of Am. v. Bucci*, 1997 U.S. Dist. LEXIS 3338

(S.D.N.Y. Mar. 19, 1997)). Other courts have explained this principle in more detail:

> "The First Amendment protects an individual's right to speak out against a markholder, *but it does not permit an individual to suggest that the markholder is the one speaking.* Here, defendants use plaintiffs' marks as a source identifier, and therefore defendants' use is not protected by the First Amendment. The fact that defendants' message is critical as a general matter is not dispositive, because *the use of the mark and not the content of the message is the focus of the inquiry.*"
>
> *SMJ Group, Inc. v. 417 Lafayette Rest. LLC*, 439 F. Supp. 2d 281, 291 (S.D.N.Y. 2006)

(emphasis added).

In addition to the demonstrated infringement of the content hosted under the domain

7

names at issue, the present matter is also factually similar to the *Planned Parenthood* and *SMJ Group* matters. The domain name includes Plaintiff's mark, most notably its very uncommon brand name. Visitors who were looking for Plaintiff or information about Plaintiff's products and services would be confused as to whether Aardwolf Industries LLC was affiliated with the domain names in question *the instant the domain names were typed into a web browser*, even in cases where the web site content could be construed as "containing information antithetical to the plaintiff's views." *Id.* While the Defendants may have a right to use any number of different domain names to create competition with and confusion surrounding the Plaintiff, the use of a name that, on its face, creates confusion as to the source of the speech is not lawful.

       5. Plaintiff's Well Pled Complaint is Sufficient to Obtain Default Judgment

       Each of the factual allegations contained in this Motion are included in Plaintiff's well-pleaded Complaint, which Defendants have already admitted by way of the Clerk's Entry of Default. *See generally Int'l Painters & Allied Trades Indus. Pension Fund v. Rose City Glass Co.*, 729 F. Supp. 2d 336 (D.D.C. 2010). Plaintiff has accordingly established its *in re*m claim under the ACPA.

### III. CONCLUSION

       Given the foregoing, Plaintiff respectfully requests that the Court grant this Motion for Default Judgment and order transfer of the domain names AARDWOLF-USA.COM and AARDWOLF-AUS.COM to the owner of the mark, Plaintiff Aardwolf Industries LLC, pursuant to 15 USC § 1125(d)(1)(C).

Respectfully submitted,

| | |
|---|---|
| /s/ Bianca Black | /s/ Eric J. Menhart |
| Bianca Black | Eric J. Menhart* |
| VSB #87324 | * Admitted *Pro Hac Vice* |
| Lexero Law | Lexero Law |
| 316 F St. NE, Suite 101 | 316 F St. NE, Suite 101 |
| Washington, DC 20002 | Washington, DC 20002 |
| Phone: (855) 453-9376 | Phone: (855) 453-9376 |
| Fax: (855) 453-9376 | Fax: (855) 453-9376 |
| Bianca.Black@Lexero.com | Eric.Menhart@Lexero.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed via ECF and all parties of record were automatically notified via that system.

/s/ Bianca Black
Bianca Black
VSB #87324
Lexero Law
316 F St. NE, Suite 101
Washington, DC 20002
Phone: (855) 453-9376
Fax: (855) 453-9376
Bianca.Black@Lexero.com